FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMES G.,                                    )   No. 1:19-CV-03193-LRS
                                             )
              Plaintiff,                      )   **ORDER GRANTING**
                                             )   **PLAINTIFF'S MOTION**
       vs.                                    )   **FOR SUMMARY JUDGMENT,**
                                             )   *INTER ALIA*
                                             )
COMMISSIONER OF SOCIAL                        )
SECURITY,                                     )
                                             )
              Defendant.                      )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 11) and the Defendant's Motion For Summary Judgment (ECF No. 12).

## JURISDICTION

James G., Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on February 26, 2015. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on October 5, 2017, before Administrative Law Judge (ALJ) M.J. Adams. Plaintiff testified at the hearing, as did Vocational Expert (VE), Stephanie Boeshaar. On April 3, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 30 years old. He has an 8th grade education and no past relevant work experience. Plaintiff's alleged disability onset date is October 17, 2014, on which date he was 28 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1  legal standards were not applied in weighing the evidence and making the decision.
2  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
3  1987).

4

5  **ISSUES**

6  Plaintiff argues the ALJ erred in: 1) failing to find he has a "severe" mental
7  health impairment; 2) failing to find he meets or equals Listing 11.02 for epilepsy; 3)
8  failing to provide adequate reasons for discounting his symptom testimony; and 4)
9  failing to provide adequate reasons for discounting medical opinion evidence.

10

11  **DISCUSSION**
12  **SEQUENTIAL EVALUATION PROCESS**

13  The Social Security Act defines "disability" as the "inability to engage in any
14  substantial gainful activity by reason of any medically determinable physical or
15  mental impairment which can be expected to result in death or which has lasted or can
16  be expected to last for a continuous period of not less than twelve months." 42
17  U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined
18  to be under a disability only if his impairments are of such severity that the claimant
19  is not only unable to do his previous work but cannot, considering his age, education
20  and work experiences, engage in any other substantial gainful work which exists in
21  the national economy. *Id.*

22  The Commissioner has established a five-step sequential evaluation process for
23  determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*,
24  482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged
25  in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §
26  416.920(a)(4)(I). If he is not, the decision-maker proceeds to step two, which
27  determines whether the claimant has a medically severe impairment or combination
28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past.  If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: right shoulder impairment and seizure disorder; 2) Plaintiff's

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 4**

1   impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404
2   Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform
3   light work as defined in 20 C.F.R. § 416.967(b): he can lift and carry 20 pounds
4   occasionally and 10 pounds frequently; sit for six hours in an eight hour workday;
5   stand and walk six hours in an eight hour workday; can do unlimited pushing and
6   pulling; can frequently climb ramps and stairs; cannot climb ladders, ropes or
7   scaffolds; can frequently balance, stoop, kneel or crouch; can occasionally crawl; can
8   occasionally reach overhead with the dominant right upper extremity; has no
9   limitation in the non-dominant left upper extremity; capable of unlimited handling,
10  fingering and feeling; should avoid exposure to hazards and heights; and cannot
11  operate a motor vehicle; and 4) this RFC allows Plaintiff to perform other jobs
12  existing in significant numbers in the national economy as identified by the VE,
13  including furniture rental consultant, ironer, tanning salon attendant, and call out
14  operator.  Accordingly, the ALJ concluded Plaintiff has not been disabled at any time
15  since February 26, 2015.

16

17  **PHYSICAL IMPAIRMENTS**

18  **A. Right Shoulder Impairment**

19  At the behest of the Commissioner, Plaintiff was examined by Beth Liu, M.D.,
20  on July 6, 2015.  The stated reason for the exam was "seizures; learning disability;
21  epilepsy."  Plaintiff complained of seizures and recurrent right shoulder dislocation
22  as a result of the seizures.  Plaintiff described having "muscle spasm all day" with his
23  arm coming out of place when picking up stuff of little weight.   (AR at p. 362).
24  Plaintiff clarified that he suffers from "[d]aily jolts" and his shoulder "keeps popping
25  out of place even during my sleep."  (*Id.*).  Plaintiff reported being able to shop, travel
26  without a companion, to use standard public transportation, to walk a block at a
27  reasonable pace on rough or uneven surfaces, to ambulate without using a device, to
28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

use standard public transportation, to climb a few steps at a reasonable pace with the use of a single hand rail, to care for personal hygiene, to prepare a simple meal and feed himself, and to sort, handle, and use paper files. (AR at p. 363).

Examination of Plaintiff's right shoulder revealed "slight tenderness" with a range of motion of 95 degrees abduction, 30 degrees adduction, 50 degrees extension, and 95 degrees flexion. Range of motion in the left shoulder was normal. (AR at p. 364). No muscle spasm was seen during the exam, nor was any significant muscle atrophy or joint deformity seen on the exam. (*Id.*).

Dr. Liu diagnosed the Plaintiff with "[u]ncontrolled grand mal seizure" and "[r]ecurrent right shoulder dislocation, secondary to grand mal seizure." (AR at p. 364). According to her:

> Physical exam shows decreased ROM in right shoulder. Neurological exam finding is grossly normal. His MRI right shoulder with contrast down on 3/3/2014 showed Prominent Hill-Sachs defect as well as prominent osseous Bankart lesion involving the anterior-inferior labrum associated with the anterior-inferior aspect, with loss of the normal pear shape. The claimant's conditions are chronic and ongoing. His seizure is uncontrolled and his right shoulder disability is permanent. He is on high doses [of] anti-seizure medications, but it seems [it is] not working for him. He needs further medication adjustment by [a] neurologist. The prognosis is fair if he gets further treatment for his condition.

(*Id.*).

Dr. Liu opined the following regarding Plaintiff's physical RFC:

> **Based on [Plaintiff's] current examination today, the medical history reviewed, previous medical records reviewed, and [Plaintiff's] account of his limitations,** he is able to lift or carry up to 10 lbs occasionally. He has no limitation in sitting, walking, or standing. He is able to perform most hand activities frequently except reaching overhead or others which he should perform[] occasionally. He is able to perform most postural activities frequently except climbing ladders or scaffolds which he should avoid perform[ing]. He may perform crawling occasionally. Environmental limitations include unprotected heights, operating [a] motor vehicle, and moving mechanical parts. In addition, he should avoid . . . working [alone] . . . .

(AR at pp. 364-65)(emphasis added).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 6**

The ALJ gave "some weight" to Dr. Liu's opinion, but "based on the physical exam results obtained in that exam, which were benign," found "the [Plaintiff] is limited to lifting or carrying 20 lbs instead of 10 lbs occasionally." (AR at p. 22). The ALJ found the April 2016 "Disability Determination Explanation, Reconsideration," in which the State of Washington Disability Determination Services (DDS) determined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, was "consistent with the physical exam results and the [Plaintiff's] self-reported activities." (*Id.*). The ALJ accorded "some weight" to the state agency's determination of a "light' RFC when taken "[t]ogether with Dr. Liu's opinion that the [Plaintiff] has 'no limitation in sitting, walking, or standing.'" (*Id.*). The ALJ observed that the state agency did not identify Plaintiff as having a severe shoulder impairment and concluded this appeared to be an error because the state agency determination nonetheless "alludes to a right shoulder dislocation when limiting overhead reaching to occasional on the right." (*Id.*).

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

53 F.3d 1035, 1041 (9th Cir. 1995).

The state agency reconsideration determination concluded Dr. Liu's opinion relied heavily on Plaintiff's subjective report of his symptoms and limitations and "the totality of the evidence does not support the opinion." (AR at p. 83). It is, however, not apparent that Dr. Liu disproportionately relied on Plaintiff's report as compared to her physical examination of the Plaintiff and her review of Plaintiff's medical history and previous medical records. Moreover, the state agency reconsideration determination offered no specific explanation of how "totality of the evidence" did not support Dr. Liu's opinion.[1] In her decision, the ALJ did not specify why Dr. Liu's physical exam results were "benign" or how her opinion that he is limited to lifting or carrying up to 10 pounds occasionally is inconsistent with his self-reported activities. (AR at p. 22). During the hearing, Plaintiff testified his right shoulder dislocates when he lifts about 25 pounds (AR at p. 45), but the ALJ did not cite this testimony as a basis for discounting Plaintiff's testimony or for discounting Dr. Liu's opinion. This is understandable as the fact Plaintiff's right shoulder dislocates at 25 pounds is not inconsistent with a restriction to lifting no more than 10 pounds occasionally. The ALJ did not offer "specific and legitimate" reasons for discounting Dr. Liu's opinion.[2]

---

[1] Indeed, the state agency reconsideration determination did not list Plaintiff's right shoulder impairment as a "medically determinable impairment." (AR at pp. 77-78).

[2] The court will assume the state agency reconsideration determination was from a medical source. It is a reasonable assumption as the court has familiarity with Paula Lantsberger, M.D., in other cases and will take judicial notice that she

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

1    Likewise, the ALJ did not offer clear and convincing reasons for discounting
2    Plaintiff's testimony regarding symptoms and limitations from his right shoulder
3    impairment.  Where, as here, the Plaintiff has produced objective medical evidence
4    of an underlying impairment that could reasonably give rise to some degree of the
5    symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's
6    reasons for rejecting the Plaintiff's testimony must be clear and convincing.  *Garrison*
7    *v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137
8    (9th Cir. 2014).  Subjective testimony cannot be rejected solely because it is not
9    corroborated by objective medical findings, but medical evidence is a relevant factor
10   in determining the severity of a claimant's impairments.  *Rollins v. Massanari*, 261
11   F.3d 853, 857 (9th Cir. 2001).

12   Plaintiff's limited work history cited by the ALJ (AR at p. 21) is not a clear and
13   convincing reason for  disputing that he is currently limited to lifting and carrying 10
14   pounds occasionally as opined by Dr. Liu.  As discussed above, the objective medical
15   evidence relied upon by Dr. Liu supports her opinion and the ALJ did not provide a
16   specific and legitimate reason for discounting her opinion.  Accordingly, the medical
17   evidence is not a clear and convincing reason to dispute that Plaintiff is limited to
18   lifting and carrying 10 pounds occasionally. Finally, none of Plaintiff's self-reported
19   activities as recited by the ALJ - shopping, traveling without a companion, using
20   public transportation, walking a block, climbing steps, caring for his personal
21   hygiene, working on cars, riding a bicycle, preparing meals, etc. (AR at pp. 21-22)-
22   constitute  a clear and convincing reason for calling into question that Plaintiff is
23   limited to lifting and carrying 10 pounds occasionally as opined by Dr. Liu.

24   At the hearing, Plaintiff's counsel asked the VE to assume Plaintiff was limited
25   to lifting 10 pounds occasionally.  The VE testified that even with this limitation,
26
27   ─────────────────
28   is a medical doctor in Spokane.

     **ORDER GRANTING PLAINTIFF'S**
     **MOTION FOR SUMMARY JUDGMENT- 9**

Plaintiff could perform work as a callout operator which is "sedentary" work.[3] The VE indicated that 15,000 such jobs existed in the national economy. (AR at pp. 50-52). Plaintiff contends this does not constitute a "significant" number of jobs in the national economy and therefore, the Commissioner failed to meet his/her Step Five burden.

The Ninth Circuit has never set out a bright-line for what constitutes a "significant number" of jobs. *Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 528 (9th Cir. 2014). In *Gutierrez*, the circuit found that 25,000 jobs met the standard, although it presented a "close call." In doing so, however, it cited an 8th circuit case, *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), which found 10,000 jobs met the standard. 740 F.3d at 528-29. At this juncture, the court declines to declare 15,000 jobs in the national economy to not be a "significant number."[4] The

---

[3] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §416.967(a).

[4] Using *Gutierrez* as a benchmark, three different district judges in the District of Oregon have issued rulings regarding what constitutes a "significant number" of jobs in the national economy. In *Cindy F. v. Berryhill*, 367 F.Supp.2d 1195, 1220 (D. Or. 2019), the court found 7,400 jobs in the national economy did not constitute a "significant number." In *Stephanie O. v. Berryhill*, 2019 WL 2713234 at *7 (D. Or. 2019), the court found 17,408 jobs did constitute a "significant number." In *Nikola G. v. Commissioner, Social Security*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

court will not, however, preclude Plaintiff from reasserting this argument should he be before the court again following further administrative proceedings necessitated by this court's remand of this matter, as discussed *infra*.

### B. Epilepsy

The ALJ found that Plaintiff's condition does not meet or equal Listing 11.02 for Epilepsy, concluding "its requirements are not met." (AR at p. 19).

The medical record contains a detailed description of Plaintiff's typical seizure as required by Listing 11.02. Laura L. Hershkowitz, D.O., conducted a four day continuous EEG monitoring study of the Plaintiff in February 2015. (AR at pp. 591-93). The ALJ's decision did not refer to this study, instead citing cranial nerve assessments conducted in February and April 2016, which were within normal limits. (AR at p. 21)

In evaluating the frequency of seizures for the purpose of determining whether Listing 11.02 is met or equaled, the Commissioner considers "adherence to prescribed treatment." According to 20 C.F.R. §404 Subpt. P, App. 2, Listing 11.00 H. 4. d.:

> We do not count seizures that occur during a period when you are not adhering to prescribed treatment without a good reason. When we determine that you had good reason for not adhering to prescribed treatment, we will consider your physical, mental, educational, and communicative limitations (including any language barriers). We will consider you to have good reason for not following prescribed treatment if, for example, the treatment is very risky for you due to its consequences or unusual nature, of if you are unable to afford prescribed treatment that you are willing to accept, but for which no free community resources are available.

The ALJ noted there is evidence indicating Plaintiff has failed to take his anti-seizure medications and his medication regimen "seems to be working when

*Administration*, 2019 WL 6114534 at *5 (D. Or. 2019), the court found 8,657 jobs did not constitute a "significant number."

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

compliant" as reported by Richard Sloop, M.D., in September 2017. (AR at p. 21).[5] Although the ALJ did this in the context of analyzing whether Plaintiff's symptoms and limitations are as severe as claimed by him, and not within the framework of whether Listing 11.02 is met or equaled, this is inconsequential. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)(ALJ required only to discuss and evaluate evidence that supports his or her conclusion and does not require the ALJ to do so under a particular heading).

What the ALJ did not analyze, however, is whether there was good cause for Plaintiff's non-compliance. The ALJ failed to consider potentially valid reasons why Plaintiff was not always compliant with his medication regimen. Plaintiff indicated he needed reminders to take his medication and there is evidence in the record that he relied upon his girlfriend for treatment (AR at pp. 201, 216 and 582), perhaps in part because of cognitive limitations. See discussion *infra*. There is also evidence

---

[5] Plaintiff's girlfriend told Dr. Sloop in July 2016 that Plaintiff "tends not to take his meds." (AR at p. 698). Plaintiff visited the Yakama Indian Health Center in December 2015 for refill of seizure medications. The doctor ordered Plaintiff one month of medication and commented it was "[f]airly clear that he is not remotely adherent to his medication regimen." (AR at p. 881). There are a number of other references in the record to Plaintiff not taking his medication (AR. at pp. 772, 775, 803, 887 and 909). In August 2014, Dr. Hershkowitz reported there was "an element of difficult [medication] compliance, but this seems to be better, and he is still having seizures." (AR at p. 335).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

in the record that Plaintiff's living situation has not been conducive to compliance (e.g., reliance on others for transportation; living in a van for a period of time; needing to establish care with providers in new locations). (AR at pp. 42-43, 203, 217, 368, 441, 495, 547, 568, 640, 645 and 650).

On remand, it will be necessary for the Commissioner to consider at Step Three the extent to which Plaintiff's failure to adhere to prescribed treatment has impacted the frequency of his seizures and whether there was good cause for that failure.[6] The absence of good cause would be a valid reason for discounting Plaintiff's testimony about the severity of his symptoms and his limitations.

**MENTAL IMPAIRMENTS**

Although Plaintiff asserted a learning disability in his application for benefits as acknowledged by the Commissioner in both his initial and reconsideration evaluation of Plaintiff's claim for disability (AR at p. 55 and p. 70), the Commissioner did not specifically consider "Intellectual disability" under Listing 12.05. Only "Affective Disorders" under Listing 12.04 was considered.

The non-examining state agency psychologists who reviewed the record, Patricia Kraft, Ph.D., and John F. Robinson, Ph.D., concluded Plaintiff has a non-severe affective disorder resulting in only "mild" restriction of activities of daily living, "mild" difficulties in social functioning, "mild" difficulties in maintaining concentration, persistence or pace, with no repeated episodes of decompensation.

---

[6] SSR 82-59, rescinded effective October 29, 2018, after the Commissioner's final decision of April 3, 2018, does not apply as there has not yet been a determination that Plaintiff's epilepsy is a "disabling impairment" which is amenable to treatment that could be expected to restore his ability to work.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

(AR at pp. 60-62; 77-79). The psychologists pointed out that Plaintiff "[a]ppears to have a cognitive impairment" and observed that his girlfriend said he could not read or write, but also asserted that "[r]ecords indicate . . . he is able to read and write . . . . he is independent with ADLs [Activities of Daily Living] and handling funds." (AR at p. 61 and p. 78).

In his decision, the ALJ agreed that Plaintiff's affective disorder is "non-severe" because it causes no more than "mild" limitation in any of the functional areas, citing evidence regarding Plaintiff's participation in social activities, his romantic and family relationships, and his independence in performing daily living activities. (AR at p. 18). The ALJ specifically accorded "some weight" to Dr. Robinson's opinion as it was "consistent with the [Plaintiff's] social activities of attending birthday parties and community parties . . . while alleging disabling mental impairments." (AR at p. 22).

On September 14, 2015, Plaintiff underwent a consultative psychological examination by Amy Ford, Psy. D., at the behest of the Commissioner. Plaintiff identified seizures and his shoulder impairment as the chief reason for his disability. (AR at p. 367). Dr. Ford reviewed Plaintiff's records from Greater Lakes Mental Health where he was assessed on January 27, 2015, and "given a provisional diagnosis of Major Depressive Disorder, single episode, moderate." (AR at p. 313). The therapist at Greater Lakes Mental Health assigned him a Global Assessment Functioning (GAF) score of 45 at that time because of "[s]erious problems with occupational and social functioning; chronically unemployed, problems with substance abuse." Defendant was discharged from Greater Lakes Mental Health on February 10, 2015, when he failed to return for a session with the therapist following the intake assessment on January 27. (AR at p. 317).

Plaintiff told Dr. Ford he left school in 9th grade, that school was hard for him, he struggled with spelling and reading, and he was in special education. (AR at p.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

368).  Plaintiff was unable to answer certain questions posed by Dr. Ford, leading her to conclude "[h]is fund of knowledge was fair to poor and his IQ is estimated to be below average based on educational history."  (AR at p. 369).  Plaintiff was unable to do Serial 7s and Serial 3s, and he could not spell the words "World" or "Girl."  Dr. Ford concluded his concentration "appears poor."  (*Id.*).  Plaintiff told Dr. Ford he did not know what he would do if he were in a crowded movie theater and was the first one to see smoke and fire.  Dr. Ford concluded Plaintiff's "judgment is impaired by low intelligence and low interest in life."  (*Id.*).

Plaintiff described his mood as depressed and Dr. Ford wrote that he was "actively suicidal."  (AR at p. 369).  Plaintiff indicated he experiences visual and auditory hallucinations.  (*Id.*).  Plaintiff described his daily living activities as including cleaning up, doing the dishes, cleaning around the house, making meals and "breakfast for everyone."  (AR at p. 370).  He watches television and visits with family and friends.  (*Id.*).  He stated he enjoys being with his girlfriend's kids and visiting with her father and brother.  (*Id.*).

Dr. Ford diagnosed the Plaintiff with "Major Depressive Disorder, Moderate to Severe (actively suicidal)."  Dr. Ford indicated that Plaintiff had been "struggling with . . . depressive disorder for several years with limited treatment."  (AR at p. 370).  She opined that he needed more routine mental health care and to adhere to . . . recommendations for routine treatment."  (*Id.*).  She opined that his ability to reason "is fair but limited" by his educational level; his understanding and memory "is impaired and fair to poor;" his ability to sustain concentration and persistence "is impaired due to chronic pain and depression;" his ability to interact socially "is limited by his pain and interest in life;" and his ability to adapt and be flexible "is limited by his pain and hopelessness."  (*Id.*).  Dr. Ford stated to please let her know if she could provide any further information (*Id.*), but  the Commissioner did not take her up on that offer.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

The ALJ accorded "very limited weight" to Dr. Ford's opinions because she did not opine that Plaintiff "has specific vocational limitations resulting from the 'impaired' abilities." (AR at p. 22). The ALJ wrote "[t]here are many jobs in the national economy that could still be performed with 'fair to poor' understanding and memory and 'impaired' concentration and persistence" (AR at p. 22), although such limitations were never presented to the VE in hypothetical questioning. The ALJ further wrote that Plaintiff had "retained sufficient concentration and persistence to work on cars, make breakfast for 'everyone' in his household . . . as well as attend birthday parties and community parties . . . ." (AR at pp. 22-23).

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.921.

Step two is a *de minimis* inquiry designed to weed out non-meritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

1    setting.  20 C.F.R. § 416.922(b).

2    The Commissioner has stated that "[i]f an adjudicator is unable to determine

3    clearly the effect of an impairment or combination of impairments on the individual's

4    ability to do basic work activities, the sequential evaluation should not end with the

5    not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005),

6    citing S.S.R. No. 85-28 (1985).  An ALJ may find that a claimant lacks a medically

7    severe impairment or combination of impairments only when his conclusion is

8    "clearly established by medical evidence." *Id*.

9    The ALJ did not consider whether Plaintiff had a medically determinable

10    learning disability, let alone whether medical evidence clearly establishes it to be

11    "severe."  While Dr. Ford did not include a learning disability as part of her

12    diagnosis, the functional limitations opined by her suggested such a condition existed

13    and had consequences for Plaintiff's ability to work.[7]  Plaintiff alleged learning

14    disability as an impairment and therefore, the ALJ had a duty to develop the medical

15    evidence regarding this impairment, particularly in light of Dr. Ford's report.

16    The ALJ has a basic duty to inform himself about facts relevant to his decision.

17    *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983).  The ALJ's duty

18    to develop the record exists even when the claimant is represented by counsel.

19    *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The duty is triggered by

20

21    _____

22    [7] Dr. Ford is not the only one to suggest the existence of a learning disorder.

23    (August 1, 2012 provisional diagnosis of Learning Disorder NOS by Dana

24    Harmon, Ph.D. at AR, p. 662; August 29, 2014 and February 2, 2015 notes from

25    Dr. Hershkowitz , AR, pp. 335 and 582; March 15, 2015 learning difficulty

26

27    diagnosis by J. Scott Taylor, M.D. at AR, p. 572).

28    **ORDER GRANTING PLAINTIFF'S**
      **MOTION FOR SUMMARY JUDGMENT- 17**

ambiguous or inadequate evidence in the record and a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

The ALJ also had a duty to develop the medical evidence to ascertain the "severity" of Plaintiff's affective disorder (depression). The medical evidence is extremely sparse in this regard and so it was incumbent upon the ALJ to follow up with Dr. Ford or another psychologist regarding the extent of Plaintiff's limitations from his affective disorder, rather than simply accepting the opinions of the non-examining psychologists that Plaintiff had no more than "mild" limitations in any functional area. It was not a legitimate reason to discount Dr. Ford's opinion because she was not more specific regarding Plaintiff's vocational limitations. Nor was it a legitimate reason to discount her opinion because the Plaintiff indicated he performed certain activities around his house and engaged in certain social activities with family and friends. These activities do not necessarily mean his mental functional limitations are no more than "mild," particularly in a workplace environment which is the relevant question. An impairment is not severe "if it does not significantly limit . . . physical or mental ability to do **basic work activities**." 20 C.F.R. §416.922(a). (Emphasis added.)

If Plaintiff suffers from a "severe" mental impairment, it certainly was not a harmless error, considering the ALJ found Plaintiff suffered from only "severe" physical impairments and did not present any mental limitations to the VE during hypothetical questioning.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

1    evaluate the challenged agency action on the basis of the record before it, the proper

2    course, except in rare circumstances, is to remand to the agency for additional

3    investigation or explanation." *Treichler v. Commissioner of Social Security*

4    *Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co.*

5    *v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

6    In "rare circumstances," the court may reverse and remand for an immediate

7    award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g).

8    Three elements must be satisfied in order to justify such a remand.  The first element

9    is whether the "ALJ has failed to provide legally sufficient reasons for rejecting

10   evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting

11   *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).   If the ALJ has so erred, the

12   second element is whether there are "outstanding issues that must be resolved before

13   a determination of disability can be made," and whether further administrative

14   proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882,

15   887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual

16   issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*

17   Finally, if it is concluded that no outstanding issues remain and further proceedings

18   would not be useful, the court may find the relevant testimony credible as a matter of

19   law and then determine whether the record, taken as a whole, leaves "not the slightest

20   uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-*

21   *Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).  Where all three elements are satisfied-

22   ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are

23   no outstanding issues that must be resolved, and there is no question the claimant is

24   disabled- the court has discretion to depart from the ordinary remand rule and remand

25   for an immediate award of benefits. *Id.*  But even when those "rare circumstances"

26   exist, "[t]he decision whether to remand a case for additional evidence or simply to

27   award benefits is in [the court's] discretion." *Id.* at 1102, quoting *Swenson v.*

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

*Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The ALJ failed to offer legally sufficient reasons for rejecting Dr. Liu's opinion that Plaintiff is limited to lifting and carrying 10 pounds occasionally as a result of his right shoulder impairment. The ALJ erred in not analyzing whether there was good cause for Plaintiff's non-compliance with his medication regimen which is relevant to the determination of whether Plaintiff's epilepsy meets or equals Listing 11.02. Finally, the ALJ erred in failing to consider Plaintiff's alleged learning disability impairment.

There are outstanding issues that must be resolved before a determination of disability can be made and further administrative proceedings would be useful in resolving those issues. The ALJ will need to determine the frequency of Plaintiff's seizures. This will require revisiting the record, in particular the EEG testing performed by Dr. Hershkowitz which the ALJ did not address. The ALJ may deem it necessary to enlist the services of a medical expert (ME) to assist in the inquiry regarding the frequency of seizures and the impact of medication non-compliance. The ALJ will then need to analyze and determine whether there was good cause for Plaintiff's non-compliance with his anti-seizure medication regimen. Related to that issue is the need for the ALJ to order another consultative psychological examination of the Plaintiff, to include intellectual testing to determine whether Plaintiff has a learning disability impairment and if so, whether it is "severe" and the extent to which it limits the Plaintiff's mental RFC. This additional consultative psychological examination should also be for the purpose of ascertaining the "severity" of Plaintiff's affective disorder and resulting limitations.

With regard to Plaintiff's physical RFC, the record establishes Plaintiff is limited to lifting and carrying 10 pounds occasionally and therefore, any additional questioning of a VE should include that lifting and carrying capacity as a given.

The extent to which Plaintiff's testimony about symptoms and/or limitations

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

arising from his epilepsy, affective disorders and any learning disability is supported by the record, remains an open question on remand.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 11) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 12) is **DENIED**.

Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**    The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___17th___ day of April, 2020.


_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 21**